UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KEITH McDAY,

                Petitioner,                        **DECISION AND ORDER**

    -vs-

                                                      No. 01-CV-6134

GLEN S. GOORD,

                Respondent.
_____

## INTRODUCTION

        Petitioner Keith McDay ("McDay") filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that his due process rights were violated at a prison disciplinary hearing that resulted in the loss of four months of good time credit. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(b).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

        On May 31, 1999, during a search of McDay's cell, a corrections officer found a piece of paper with the name, address and telephone number of another corrections officer written on it. The misbehavior report filed against McDay charged that he possessed contraband–namely, the personal contact information for a corrections officer. On June 12, 1999, following a disciplinary hearing, McDay was found to have violated regulations by possessing contraband and sentenced to a one-year loss of good time credit. On July 6, 1999, the sentence was administratively modified to a four-month loss of good time credit.

        McDay was conditionally released to parole on June 15, 2000. He was declared

-1-

delinquent by the parole board on June 21, 2000, and returned to the department of corrections on October 16, 2000. He was released from confinement on the parole revocation on November 10, 2001. McDay went back into custody, however, on September 1, 2004, after being convicted of a new charge of second degree burglary. He is currently serving a term of 20 years to life.

McDay filed the instant habeas petition on March 16, 2001, alleging that his First Amendment right to correspond was violated and that he did not have sufficient notice that the information he possessed about the corrections officer constituted contraband. Respondent argues that McDay's petition should be dismissed as moot. For the reasons set forth below, the petition is dismissed.

## DISCUSSION

"The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are '*in custody* in violation of the Constitution or laws or treaties of the United States.'" *Maleng v. Cook*, 490 U.S. 488, 490 (1989) (quoting 28 U.S.C. § 2241(c)(3) (emphasis in original) and citing 28 U.S.C. § 2254(a)).  The Supreme Court has "interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng*, 490 U.S. at 490-91 (citing *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)). In the present case, McDay filed his federal habeas petition on March 16, 2001, while he was in custody for the June 2000 parole violation.  Thus, because McDay was incarcerated at the time he filed his habeas petition, he fulfills the "in custody" requirement of 28 U.S.C. § 2241.

Although jurisdiction is not an issue, the Court's initial inquiry does not end there. If

McDay's petition does not satisfy the "case-or-controversy" requirement of Article III, Section 2 of the Constitution, it is moot and the Court may not consider it. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998). To satisfy this requirement, the petitioner must, at all stages of the litigation, have suffered, or be threatened with, an actual injury which is likely to be redressed by a favorable judicial decision. *See id.* For a petitioner who is no longer in custody, that means a demonstration of a "concrete and continuing injury" that is a "collateral consequence" of the alleged constitutional violation and can be remedied by granting the writ. *Id.* (citing *Carafas*, 391 U.S. a 237-38).

  Where the petitioner challenges the criminal conviction itself, the Supreme Court has been willing to presume that a wrongful conviction has continuing collateral consequences, or to "to count collateral consequences that are remote and unlikely to occur." *Spencer*, 523 U.S. at 8; *accord United States v. Probber*, 170 F.3d 345, 348 (2d Cir. 1999). This presumption of collateral consequences has been justified upon the notion that "most criminal convictions do in fact entail adverse collateral legal consequences," *Sibron v. New York*, 392 U.S. 40, 55 (1968), in that convicted criminals often face certain "civil disabilities" as a result of their conviction, *Lane v. Williams*, 455 U.S. 624, 632 n. 13 (1982). Examples of such disabilities include being "barred from holding certain offices, voting in state elections, and serving as a juror." *Lane*, 455 U.S. at 632.

  In *Spencer v. Kemna*, the Supreme Court spoke rather critically of the *Sibron* presumption, but declined to alter it. Rather, the Supreme Court adhered to its course of refusing to "extend [*Sibron*'s] presumption of collateral consequences (or [*Sibron*'s] willingness to accept hypothetical consequences) to the area of parole revocation." 523 U.S. at 19 (citing *Lane*, 455

U.S. at 632-33, 639-40 (rejecting contention of convicted felons who had completed their sentences that their challenges to their sentences of three years' mandatory parole at the conclusion of their fixed terms of incarceration (which parole they had violated) were not moot because the revocations of parole could be used to their detriment in future parole proceedings should they ever be convicted of other crimes)); *accord*, *e.g.*, *United States v. Mercurris*, 192 F.3d 290, 294 (2d Cir. 1999) (recognizing *Sibron* presumption but declining to extend it to a petitioner challenging a sentence enhancement); *United States v. Probber*, 170 F.3d 345, 348-49 (2d Cir.1999) (recognizing *Sibron* presumption but finding a challenge to revocation of supervised release indistinguishable from the parole revocation at stake in *Spencer*); *Butti v. Fischer*, __ F. Supp.2d __, 2005 WL 2124108, at *2 (W.D.N.Y. Aug. 30, 2005) (holding that collateral consequences not presumed in a challenge to a disciplinary hearing that resulted in petitioner's loss of good time credits).

     Here, collateral consequences cannot be presumed because McDay does not challenge his prior conviction. Rather, he only asserts that his good time credits were wrongfully revoked after he was found to have violated in a prison disciplinary proceeding of possessing contraband. In such a case, McDay must prove the existence of a concrete, continuing injury-in-fact that is a collateral consequence of the alleged wrongful revocation of good time credits. *See*, *e.g.*, *Spencer*, *supra*; *Butti*, *supra*. This he is unable to do on the record before the Court.

     First of all, it is not sufficient that the disciplinary violation could be used to McDay's detriment in a future parole or other criminal proceeding, perhaps so as to enhance the term of a future sentence. *Spencer*, 523 U.S. at 14-15 (rejecting argument that mootness was avoided by the possibility that a parole revocation might be used to increase a future sentence, in the event of

a future law violation since the person apprehending such a possibility is "'able–and indeed required by law–to prevent such a possibility from occurring'") (quoting *Lane*, 455 U.S. at 633)). Although this possibility is no longer contingent upon McDay's again violating the law–given his present incarceration on a burglary charge–it is not "a certainty or even a probability" and therefore is not adequate to prove the existence of adverse collateral consequences. *Id.*; *see also Lane*, 455 U.S. at 632-33 (the fact that the parole violations would enable the parole board to deny respondents parole in the future, or might affect their employment prospects or increase the sentence imposed upon them in future criminal proceedings were found insufficient to prove "collateral consequences"). Furthermore, the possibility that the disciplinary violation could be used to impeach McDay should he appear as a witness or litigant in a future criminal or civil proceeding; or could be used against him directly, should he appear as a defendant in a criminal proceeding, is not sufficient to prove adverse collateral consequences since it is merely speculative whether such an appearance will ever occur. *Spencer*, 523 U.S. at 14.

It is clear that McDay has not met his burden of demonstrating some "concrete and continuing injury" sufficient to create an Article III case or controversy. *See Spencer*, 523 U.S. at 7; *see also Probber*, 170 F.3d at 348. Consequently, his habeas petition must be dismissed as moot.

**CONCLUSION**

For the reasons stated above, Keith McDay's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is dismissed.  Because McDay has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

DATED: October 13, 2005
Rochester, New York.